UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| RICHARD JOHNSON and DEANNA JOHNSON, <br><br> Plaintiffs, <br><br> v. <br><br> CENTROME, INC. (d/b/a ADVANCED BIOTECH); VIGON INTERNATIONAL, INC.; ALFREBRO, LLC; WILD FLAVORS, INC.; ARCHER-DANIELS-MIDLAND COMPANY; INTERNATIONAL FLAVORS AND FRAGRANCES, INC. (f/k/a BUSH BOAKE & ALLEN, INC.); GIVAUDAN (f/k/a TASTEMAKER, FRIES & FRIES, MALLINCKRODT); POLAROME INTERNATIONAL, INC., CITRUS AND ALLIED ESSENCES, LTD., <br><br> Defendants. | Cause No. 2:20-CV-165-PPS-JPK |

**OPINION AND ORDER**

This is a products liability action brought against multiple defendants for Richard Johnson's alleged harmful exposure to multiple toxicants during his employment at a local popcorn factory. [DE 61, 77.] There are two motions to dismiss presently before me which argue that the Johnsons failed to sufficiently allege any actionable claims. While the Johnsons have alleged enough factual allegations for certain claims, the amended complaint is not without deficiencies. For the following reasons, the motions will be granted in part and denied in part.

## Background

Between 1992 and 1999, Mr. Johnson worked for ConAgra Brands at the Orville Redenbacher Popcorn Facility in Valparaiso, Indiana. [DE 34 at ¶ 3.] Johnson was allegedly exposed to certain flavoring chemicals including "diacetyl, 2,3-hexandeione, 2.3-heptanedione, and other related diketones and flavoring chemicals" which caused respiratory problems and related illnesses. *Id.* at ¶ 17. Mr. Johnson and his wife brought this action against several defendants claiming fraudulent concealment, strict liability for manufacturing and design defects, failure to warn, negligence, and loss of consortium. [DE 34.] The amended complaint also alleges a civil conspiracy with Flavor Extract Manufacturers Association (FEMA) and Givaudan (f/k/a Tastemaker) to conceal that the flavorings contain diacetyl and that diacetyl can cause bronchiolitis obliterans, otherwise known as "popcorn lung." *Id.* at ¶¶ 28-35. It also alleges that another defendant, BASF, conducted a diacetyl study on rats, found it caused respiratory problems, and then concealed it from the public. *Id.* ¶ 29.

The amended complaint further alleges that Givaudan hired Dr. James Lockey in 1996 to investigate the cause and extent of popcorn lung under a non-disclosure agreement and concealed the adverse findings from the public. *Id.* at ¶ 34-35, 38. Five years earlier, in 1991, Givaudan had developed and marketed a diacetyl-free substitute butter flavoring. *Id.* at ¶ 37. According to the amended complaint, despite knowing of the dangers of diacetyl, it continued to market and use diacetyl into the late 1990s. *Id.* at ¶¶ 38-39. Plaintiffs identify the defective product as "toxic flavorings," which include

"diacetyl, 2,3-hexandeione, 2.3-heptanedione, and other related diketones and flavoring chemicals." *Id.* at ¶ 17.

The Johnsons' Amended Complaint is a blunderbuss against fifteen defendants: Centrome, Berje, Vigon, Charkit, Alfrebro, WILD, Archer-Daniels-Midland, Mane, International Flavors, Givaudan, BASF, Polarome, Elan Chemical, O'Laughlin, and Citrus and Allied Essences, for personal injury in this products-liability case. Before going further, I will untangle and separate defendants by their present procedural posture. The Johnsons dismissed six defendants: Charkit, Berje, Elan Chemical, O'Laughlin, BASF, and Mane – so nothing more need be said about any of them. The defendants that remain include Centrome, International Flavors, WILD, Alfrebro, Archer-Daniels-Midland, Givaudan, Vigon, Citrus and Allied Essences, and Polarome,.

Defendants Centrome and International Flavors have filed answers to the amended complaint. [DE 58, 100.] Two others have filed motions to dismiss joined by other defendants. First, WILD Flavors Inc. seeks dismissal joined by Alfrebro, LLC, and Archer-Daniels-Midland Company. [DE 61.] Second, Givaudan Flavors Corporation also seeks dismissal joined by Citrus and Allied Essences and Vigon International. [DE 77.] As for Defendant Polarome, it has not been properly served. [DE 88, 102.]

## Discussion

To survive a motion to dismiss, a complaint must state "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must state "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]he plaintiff [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Triad Assoc. v. Chicago Housing Authority*, 892 F.2d 583, 586 (7th Cir. 1989). While I must "draw all reasonable inferences of fact in the non-movant's favor," threadbare legal conclusions supported by purely conclusory statements will not suffice. *Gibson v. Am. Cyanamid Co.,* 760 F.3d 600, 605 (7th Cir. 2014); *see Iqbal*, 556 U.S. at 678.

## I. Fraudulent Concealment and Negligence (Counts I and V)

Givaudan argues that the Johnsons' counts of fraudulent concealment (Count I) and negligence (Count 5) should be dismissed as being subsumed by the Indiana Products Liability Act (IPLA). The IPLA expressly "governs all claims brought by a consumer against a manufacturer for physical harm caused by its product, regardless of legal theory." *Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1007 (7th Cir. 2020); *see* Ind. Code § 34-20-1-1. In other words, the IPLA is the exclusive remedy for personal injury claims caused by a manufacturer's product. "As the Indiana Supreme Court has noted, 'several federal district courts and other panels of the [Indiana] Court of Appeals have held that tort-based breach of warranty claims have been subsumed into the [IPLA].'" *Lyons v. Leatt Corp.*, 2015 U.S. Dist. LEXIS 152015, at *6 (N.D. Ind. Nov. 10, 2015) (quoting *Kovach v. Midwest*, 913 N.E.2d 193, 197 (Ind. 2009) and citing cases); s*ee Payton v. Johnson &*

*Johnson*, 2021 U.S. Dist. LEXIS 91476, at *25 (S.D. Ind. May 13, 2021); *see Cavender v. Medtronic, Inc.*, 2017 U.S. Dist. LEXIS 57376, at *12 (N.D. Ind. Apr. 14, 2017).

Here, the Johnsons allege state claims of fraudulent concealment and negligence as well as a claim under the IPLA. However, the Johnsons may only seek recovery under the IPLA and not the other state law claims. Indeed, they concede that their claims of fraudulent concealment and negligence are subsumed by the IPLA. [DE 83 at 2.] Accordingly, these claims will be merged into a single cause of action under that statute for manufacturing defect, design defect and failure to warn.

## II.     Indiana Products Liability Act (Counts II, III, and IV)

Both motions to dismiss argue that the IPLA allegations are insufficient to state a claim under *Twombly* and *Iqbal*. Defendants[1] allege that the Johnsons failed to properly identify the product and how Defendants proximately caused the defect. At this stage, I am not deciding the merits of the Johnsons' claims, but rather the sufficiency of the amended complaint. *Twombly*, 550 U.S. at 570. So, I turn to the operative complaint [DE 34] to determine whether they have pleaded factual allegations that support claims under the IPLA which may proceed past the dismissal stage.

First, Defendants criticize the Johnsons' lack of specificity in identifying the "toxic flavorings" as the product causing harm. Defendants argue that they do not manufacture "toxic flavorings" and such a descriptor is so vague as to render the

---

[1] Unless specificity requires otherwise, I use the term "Defendants" here to refer collectively to all the companies bringing similar Motions to Dismiss, when their arguments overlap.

amended complaint meaningless. The Johnsons allege that the causes of Mr. Johnson's injury were from "diacetyl, 2,3-hexandeione, 2[,]3-heptanedione, and other related diketones and flavoring chemicals" and refer to this group of chemicals as "toxic flavorings" throughout the amended complaint. [DE 34 at ¶ 17.] I will begin my analysis by dividing the description of "toxic flavorings" into two categories: (1) diacetyl, 2,3-hexandeione, 2,3-heptanedione; and (2) other related diketones and flavoring chemicals.

As noted, the Johnsons identify three specific products that they allege Defendants manufactured and injured Mr. Johnson: diacetyl, 2,3-hexandeione, and 2,3-heptanedione. [DE 34 at ¶ 17.] Under the *Twombly* standard, Plaintiffs need only satisfy the minimal pleading requirements necessary to identify a product in a products liability action. *See DuRocher v. Riddell, Inc.*, 97 F. Supp. 3d 1006, 1019 (S.D. Ind. 2015) (citing multiple products liability cases at the motion to dismiss stage). The claim for relief must contain a short and plain statement showing the plaintiff is entitled to relief and a demand for the relief sought. FED. R. CIV. P. 8. The allegations must be more than a recitation of the elements or mere conclusions. *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 517 (7th Cir. 2015). However, they need not contain specific factual allegations either. *Id.* Rather, "the complaint need contain only factual allegations that give the defendant fair notice of the claim for relief and show the claim has 'substantive plausibility.'" *Id.* (citing *Johnson v. City of Shelby*, 135 S. Ct. 346 (2014)).

To survive a motion to dismiss, Plaintiffs simply need enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements, putting Defendants on notice of which products are involved. *Twombly*, 550 U.S. at 566. Plaintiffs have succinctly identified three chemicals allegedly manufactured by Defendants which could have plausibly caused his injury. In short, the Johnsons have satisfied a claim for relief under Rule 8 for the following chemicals: diacetyl, 2,3-hexandeione, and 2,3-heptanedione.

By contrast, the second part of the Johnsons' description of "toxic flavorings" – "other related diketones and flavoring chemicals" – is entirely too vague to survive dismissal. Such a vacuous allegation fails to put the defendants on reasonable notice of which products are being alleged as defective. The Johnsons argue that without discovery, they are unable to identify additional dangerous products and implore the court to allow these claims to survive this stage in the litigation. But unlike the three chemicals mentioned above, which puts the Defendants on specific notice of what is being alleged, the wholesale allegation of "other related diketones and flavoring chemicals" tells the defendants nothing at all. Plaintiffs may discover specific diketones and flavoring chemicals which contributed to Mr. Johnson's injury and may move to amend in the future. But at this stage, the vague allegations of "other related diketones and flavoring chemicals" and "toxic flavorings" are too broad to put Defendants on notice of additional claims against them.

Next, Givaudan argues that the Johnsons vaguely lump all Defendants together, who are all at different stages in the supply chain and have significantly different businesses, and specifically allege the extent of each Defendant's involvement. They argue that the Johnsons have failed to make a single specific allegation against any of the named Defendants as to which flavoring(s), ingredient(s) a particular Defendant manufactured, marketed, formulated, distributed which caused alleged harm to Mr. Johnson. Givaudan alleges that the failure to link Defendants with the alleged product dooms the complaint because it does not allege proximate cause. The Johnsons respond that they have properly alleged each Defendant as being part of the chain of distribution of the products which injured Mr. Johnson.

The Johnsons are correct that the IPLA governs all actions "brought by a user or consumer against a manufacturer or seller for physical harm caused by a product . . .." Ind. Code. § 34-20-1-1. They identify each Defendant in the Amended Complaint as a "manufacturer" of "diacetyl . . . that proximately caused Plaintiff's injuries." [DE 34 at ¶¶ 92-93.] Additionally, they specifically allege that each defendant "imported, extracted, formulated, manufactured, supplied, distributed, and sold diacetyl." [DE 34 at ¶¶ 4-17, 68, 80, 94.] As I previously stated, the allegation that their manufacturing of diacetyl, 2,3-hexandeione, and 2,3-heptanedione caused Mr. Johnson harm is enough to put Defendants on notice. Nothing more is needed. Additionally, a defendant "need not be the sole cause of the plaintiff's injuries; it needs to be only one of the proximate

-8-

causes rather than a remote cause." *Carey v. Ind. Physical Therapy, Inc.*, 926 N.E.2d 1126, 1129 (Ind. Ct. App. 2010) (internal citation omitted).

At this stage in the litigation, I must draw all reasonable inferences of fact in Plaintiffs' favor. *Gibson,* 760 F.3d at 605. Taking the allegations in the Amended Complaint as true, the Johnsons have stated a claim for relief that survives dismissal. *Twombly*, 550 U.S. at 570. Plaintiffs sufficiently allege that the Defendants were a proximate cause of the injury to Mr. Johnson caused by diacetyl, 2,3-hexandeione, and 2,3-heptanedione. Whether there is evidence, and not simply allegations, to support the claim will be dealt with at summary judgment. But, for now, it is enough to say that the Johnsons have alleged enough to survive a dismissal.

Givaudan also argues that the Johnsons have failed to identify the specific medical injury and that "lung damage" is not enough. [DE 77.] The Johnsons respond that they properly allege that Mr. Johnson sustained "injuries to his respiratory system and related illnesses and injuries" and sustained "severe and permanent respiratory injury" and "lung disease." [DE 83 at 5.] The Johnsons are correct that they are not required under Rule 8 to allege a specific diagnosis. FED. R. CIV. P. 8. Givaudan fails to cite a case requiring a medical diagnosis or specific medical injury to be alleged in a complaint in order for the case to survive a motion to dismiss. If anything, that is an issue of the sufficiency or weight of the evidence, not the adequacy of the Johnsons' complaint. Therefore, I find that the Johnsons have sufficiently alleged injury from the

alleged exposure to three chemicals in Defendants' products and the Motion to Dismiss will be denied with respect to this claim.

### III. Personal Jurisdiction

The WILD Defendants clumsily contest personal jurisdiction in an extensive and lengthy footnote but not in the body of their brief or in the prayer for relief. [DE 61-1 at 3-4.] *See N.Y. Wheel Owner LLC v. Mammoet Holding B.V.*, 481 F. Supp. 3d 216, 252 (S.D.N.Y. 2020) ("But an argument 'relegated to a footnote . . . does not suffice to raise [an] issue.") (citing *Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 43 n.2 (S.D.N.Y. 2018))). Despite the relegation of this argument to a footnote, I will address it in the interest of completeness.

Personal jurisdiction is determined by the laws of the forum state. FED. R. CIV. P. 4(k)(1)(A); *see Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Indiana's long-arm statute allows jurisdiction so long as it's consistent with the Due Process Clause of the Fourteenth Amendment. IND. R. TRIAL. P. 4.4(a); *Rodriguez v. Cavitec AG*, 2010 WL 2519715, at *4 (N.D. Ind. June 14, 2010). In order for personal jurisdiction to be consistent with due process, an out-of-state defendant must have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A defendant's "contacts [must] proximately result from the actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 475 (1985) (emphasis in original) (internal citation omitted). When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); FED. R. CIV. P. 12(b)(2).

Personal jurisdiction may be established by either general jurisdiction or specific jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 and n.8-9 (1984). Under general jurisdiction, I look to whether the WILD Defendants' affiliations with Indiana "are so continuous and systematic as to render [them] essentially at home in" Indiana. For example, if the WILD Defendants were incorporated or had their principal place of business in Indiana then there would be general personal jurisdiction over them here. *Daimler v. AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (internal quotations omitted). That is not the case here. So, the only real question is whether the WILD Defendants are subject to specific personal jurisdiction.

Specific jurisdiction requires that the WILD Defendants have a fair warning that their particular activity may subject it to jurisdiction in Indiana. *Schaffer v. Heitner*, 433 U.S. 186, 218 (1977). This necessarily means that specific jurisdiction is decided on a case-by-case basis. *Purdue*, 338 F.3d at 780. To show specific personal jurisdiction, Plaintiffs must allege that (1) the WILD Defendants purposefully availed themselves of doing business in Indiana; (2) their alleged injuries "arose out of" or are "connected with" the WILD Defendants' activities in Indiana; and (3) that exercising jurisdiction

-11-

would comply with "fair play and substantial justice." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010).

Here, the Johnsons allege that the WILD Defendants "imported, extracted, formulated, manufactured, supplied, distributed, and sold diacetyl, including diacetyl that caused [Mr. Johnson's] injuries . . .," that the "diacetyl . . . was delivered to [Mr. Johnson] and ConAgra [his employer] without any change in its defective condition, and [Mr. Johnson] used the diacetyl and toxic flavorings in the manner expected an intended by handling, mixing, blending, and/or incorporating into finished products diacetyl and toxic flavorings in a manner that created fumes and vapors which he inhaled." [DE 34 at ¶¶8-10, 73.]

The WILD Defendants allege that Alfrebro was not formed in Ohio until 2012, making it factually impossible to have caused Mr. Johnson's injuries, that WILD is only liable to the extent it is Alfrebro's parent company, and that ADM does not manufacture "toxic" flavorings. [DE 61-1 at n.2] However, these are factual inquiries and at this stage, I am testing the sufficiency of the complaint, not its merits. Plaintiffs have indeed alleged that the WILD Defendants are manufacturers or sellers, whose products included diacetyl, which caused Mr. Johnson's injury, all of which is enough to state a claim for relief. [DE 34 at ¶8.] While it may be true that there are factual impossibilities which the WILD Defendants rely on later in the litigation to avoid liability, nothing that the WILD Defendants claim now calls into question the court's personal jurisdiction over it.

Plaintiffs alleged in their Amended Complaint that the Defendants were manufacturers or sellers under the meaning of the IPLA, the products allegedly contained diacetyl, which caused Mr. Johnson's injury here in Indiana. At this stage in the litigation, taking the Johnsons' allegation as true, they have stated claims against the WILD Defendants and their argument for a lack of personal jurisdiction found in a footnote in their Motion to Dismiss will be denied.

### IV.     Failure of Service on Polarome

As alluded to above, there is one final matter related to Defendant Polarome. The Johnsons were ordered to either file proof of service on Defendant Polarome International Inc. or show cause by February 26, 2021. [DE 102.] Federal Rule of Civil Procedure 4(m) allows the court to dismiss an action without prejudice against a defendant if that defendant is not served within 90 days of plaintiff filing the complaint. FED. R. CIV. P. 4(m). Having failed to do comply with this court's order, this case will be dismissed without prejudice as to Defendant Polarome International Inc. for lack of timely service pursuant to Federal Rule of Civil Procedure 4(m).

### Conclusion

Based on the foregoing, Defendants' Motions to Dismiss [DE 61, 77] are **GRANTED IN PART, DENIED IN PART**.

Plaintiffs' claims of Fraudulent Concealment (Count I) and Negligence (Count V) are SUBSUMED by the Indiana Product Liability Act claim and merged into a single

cause of action under that statute for manufacturing defect, design defect and failure to warn.

The Motions to Dismiss are **DENIED** as to Counts II, III, and IV as the allegations pertain to diacetyl, 2,3 hexandeione, 2,3-heptanedione.

The Motions to Dismiss are **GRANTED** as to Plaintiffs' references to "other related diketones and flavoring chemicals."

This case is now **DISMISSED WITHOUT PREJUDICE** as to Defendant Polarome International Inc. for lack of timely service pursuant to Fed. R. Civ. P. 4(m).

SO ORDERED on September 30, 2021.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT