UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| RICHARD JOHNSON and DEANNA JOHNSON, </br>          Plaintiffs, </br></br> v. </br></br> CENTROME, INC., *et al.*, </br>          Defendants. | ) </br> ) </br> ) </br> ) </br> )   CAUSE NO.: 2:20-CV-165-PPS-JPK </br> ) </br> ) </br> ) |

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Compel Defendant Givaudan Flavors Corporation ("Givaudan") to Respond to Discovery [DE 165].

In brief, Plaintiffs allege as follows: Plaintiff Richard Johnson worked at the ConAgra microwave popcorn facility in Valparaiso, Indiana, between 1992 and 1999. Among his jobs was to mix flavoring compounds in large tanks to create microwave popcorn coating. One of the compounds he worked with contained diacetyl, a chemical now known to cause broncholiotis ("popcorn lung"), a permanent narrowing of the bronchial tubes in the lungs. Defendant Givaudan, which supplied[1] at least some of the compound containing diacetyl, has frequently been sued by workers claiming they sustained popcorn lung from its flavorings. Givaudan argues that in this case, only a small quantity of diacetyl was sent to the Valparaiso plant, and Johnson could not have been exposed to it based on the timing of when it was sold to the plant.

Johnson experienced shortness of breath, among other respiratory symptoms, during and after his employment, but doctors had not been able to pinpoint the cause. In 2009, he was diagnosed with popcorn lung. Johnson and his wife, Deanna, sued under the Indiana Products

---

[1] Givaudan clarifies that the compound relevant to this case was in fact supplied by a company called Tastemaker, which Givaudan purchased in 1997.

Liability Act alleging that he was injured by Givaudan's diacetyl products and that Givaudan failed to warn him of the hazards of its products. In discovery, Plaintiffs requested that Givaudan produce a variety of documents related to its knowledge of diacetyl, including documents from other cases. Givaudan objected to the requests and produced far less than what Plaintiffs requested. The parties conferred but could not resolve their disagreement, and Plaintiffs filed this motion to compel, along with the required certification that the parties tried to resolve the matter without court involvement. *See* [DE 165-1]; Fed. R. Civ. P. 37(a)(1); N. D. Ind. L. R. 37-1(a).

## ANALYSIS

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or provides evasive or incomplete responses. *See* Fed. R. Civ. P. 37(a). The Federal Rules permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense, and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. The party objecting to the discovery request bears the burden of showing why the request is improper. *See McGrath v. Everest Nat. Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008). The Court has broad discretion when deciding whether to compel discovery. *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014).

The Court addresses the issues raised by Plaintiffs in the order presented in their motion.

**"Preliminary Statement"**

Plaintiffs first ask the Court to strike a "Preliminary Statement" produced by Givaudan along with its responses to their requests for production. The preliminary statement consists of a series of caveats and conditional objections regarding Givaudan's documents and responses, and a lengthy narrative contesting Plaintiffs' theory of the case. *See* [DE 166-8 at 1-4], [DE 166-9 at

2

1-4]. Givaudan argues that this statement "provided background context," and did not contain any improper general objections. Resp. at 26 [DE 174]. But the objections are boilerplate, and none of them are addressed to a particular request, so they are not proper. *Crespo v. Nat'l R.R. Passenger Corp.*, No. 2:19-CV-275-JTM-JEM, 2021 WL 1291769, at *2 (N.D. Ind. Apr. 7, 2021) ("Objections to a discovery request that 'recite boilerplate language without explanation do not meet [an objecting party's] burden, and courts within the Seventh Circuit consistently overrule them or entirely disregard such objections.'") (quoting *Burkybile v. Mitsubishi Motors Corp.*, 2006 WL 2325506, at *9 (N.D. Ill. 2006)). The Court will therefore strike the Preliminary Statement and disregard the objections. *See, e.g., Barker v. Kapsch Trafficcom USA, Inc.*, No. 119CV00987TWPMJD, 2019 WL 2524249, at *1 (S.D. Ind. June 18, 2019) (striking respondent's "'kitchen sink' Preliminary Statement . . . [making] no attempt to articulate a basis specific to a request"); *Anglin v. Vill. of Washington Park*, No. CIV. 03-846-MJR, 2006 WL 1308579, at *1 (S.D. Ill. May 10, 2006).

**Privilege Log**

Next, Plaintiffs object to a statement by Givaudan in response to document requests #1-13, 26, and 27: specifically, Givaudan's objection "to the extent [the request] seeks documents protected by the attorney client privilege and/or work product doctrine." *See* [DE 166-8]. Plaintiffs demand that Givaudan provide a privilege log to account for any documents not produced for those reasons. Givaudan now clarifies that it has no privileged documents to produce, but that it made the objection in case other documents are found later. Since there are no documents currently being withheld based on privilege, the objection will be disregarded. *See In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 307 (N.D. Ill. 1997) (objecting party had not "identified the documents for which the [privilege] claim is made nor supplied the information

3

required" to support it). If Givaudan does attempt to withhold documents based on privilege, it must provide a privilege log that expressly describes the documents it is referring to and the basis for the privilege claims. *See* Fed. R. Civ. P. 26(b)(5).

**Requests #5 and #7**

Plaintiffs' requests #5 and #7 seek documents from the custodial files of Doug West and Fred Stults, two employees of Givaudan. Givaudan's initial disclosures identified West as a "Givaudan flavor scientist" who has knowledge regarding the ingredients and the development of Givaudan's flavors, among many other topics. [DE 166-10 at 2]. Givaudan identified Fred Stults as its former Global Head of Product Safety and Regulatory Assurance, who knows about Givaudan's flavor creation process, the ingredients, medical and scientific data about the compounds, and compliance with applicable regulations, among other topics. *Id*. at 2-3.

Plaintiffs specifically requested documents in those employees' custodial files "pertaining to the information listed" in Givaudan's initial disclosures. Givaudan objected that the requests were vague, overbroad, and sought irrelevant information, and particularly that the term "custodial file" was ambiguous. It agreed to produce documents "related to the ConAgra Valparaiso Plant where [Johnson] worked and products containing diacetyl that were sold to the [plant]" during his employment. *Id*. at 5-7. For Stults, the head of product safety, Givaudan also agreed to produce documents related to the "development of medical and scientific knowledge relating to diacetyl." *Id*. at 7. Plaintiffs argue that the objections were boilerplate, and Givaudan "does not explain how it would be harmed" by producing all the documents requested. Pl. Mem. at 16 [DE 166]. Leaving aside those merits, Givaudan made its reasoning clear: it does not believe it is obliged to produce documents unless they are linked to the specific diacetyl compounds to which Richard Johnson was exposed, or the plant he worked at.

4

Plaintiffs believe they are entitled to written discovery on each of the topics Givaudan identified in the initial disclosures for West and Stults. The initial disclosures are meant to identify "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i); *see also City of Chicago v. Purdue Pharma L.P.*, No. 14 CV 4361, 2017 WL 2819948, at *1-2 (N.D. Ill. Mar. 3, 2017). Since Givaudan picked the topics, it is understandable that Plaintiffs would seek discovery on them.[2] More to the point, Givaudan has not shown that the only documents relevant to its claim are those concerning the Valparaiso plant. For the reasons described below, documents showing Givaudan's general understanding of the danger of diacetyl and popcorn lung are relevant to its alleged duty to warn, even if that knowledge is not specific to the particular mixture Richard Johnson handled, or the plant where he worked.

In briefing, Givaudan gives a lengthy description of the differences between the Valparaiso plant and the other cases Plaintiffs are asking about – particularly from a plant in Cincinnati, Ohio (the "Tastemaker" plant). For example, the Valparaiso plant was a microwave popcorn plant, while the Tastemaker plant was a "flavoring" plant, which was structured and organized differently, involved different compounds, and gave its employees different levels of exposure[3] to chemicals. *See* Resp. at 8-12. Givaudan analogizes this dispute to an unreported case in another district,

---

[2] Givaudan argues that the requests are "problematic and impossible to respond to because Mr. West and Dr. Stults were generally identified has having information regarding broad aspects of Givaudan's business, including, for example, information about 'Givaudan's business,' 'the development of flavor formulas,' and 'Givaudan's relationship with ConAgra,' among other topics." Resp. at 23-24. The Court does not see why this makes the requests "impossible to respond to," particularly since that language was adopted from Givaudan's own initial disclosures.

[3] In a footnote, Givaudan asserts that "[c]omparing exposure to pure, undiluted diacetyl to the small amount of diacetyl in butter flavors is like comparing exposure to pure, undiluted chlorine to the small amount of chlorine in a swimming pool. They simply are not the same, and whether exposure to the former is harmful is not in any way indicative that exposure to the latter is as well." Resp. at 10, n.6. The statement is without citation to the record or any supporting evidence. To the extent intended to show that Plaintiffs' requests are irrelevant because Johnson was exposed to less concentrated amounts of diacetyl, it does not meet Givaudan's burden to show that the discovery requests are improper.

5

*Whitley v. GM LLC*, where the court remarked that "discovery relating to products that are not 'substantially similar' to the product at issue [has] little evidentiary value and should not be allowed." 2018 WL 1932968, at *4 (S.D. Ill. Apr. 24, 2018).

To the extent applicable here, *Whitley* actually supports Plaintiffs' argument. *Whitley* involved an accident allegedly stemming from a design defect with a heated seat on a 2011 GMC Sierra truck. 2018 WL 1932968 at *1. The defendant, GM, offered to produce documents relating to 10 different GMC truck models for each model year over a 6-7 year period. The plaintiffs sought further information related to several other models. *Id*. at *2-3. GM relied on a declaration from a technical expert, which explained why the 10 models identified were sufficiently similar to the 2011 Sierra but the others sought by the plaintiffs were not. The court agreed with GM's expert but nonetheless expanded the list of "similar" vehicles to include an additional model year. *Id.* at *3-4. Here, Givaudan has taken a far more extreme approach than GM did in *Whitley*, by asserting that *only* information from the plant where Johnson worked occurred could be relevant to the broader question of whether Givaudan as a corporation knew about the dangers of diacetyl. And Givaudan has not supported this interpretation with any kind of scientific expertise, as GM did.[4]

Givaudan further asserts that "during the only time frame when Plaintiff could have possibly been exposed to a Tastemaker flavor (1994-January 1995), Tastemaker clearly had not – even according to Plaintiffs' own cited evidence – identified the cause of the few instances of employee illness" – so in Givaudan's view, nothing that happened at the Tastemaker plant could be relevant to this case. But that does not necessarily follow from the evidence presented in the

---

[4] Givaudan did attach an affidavit from a previous case to its response, containing the testimony of Nancy Higley, a biochemistry Ph.D. and Givaudan's former Vice President of Product Safety and Regulatory Assistance. [DE 174-4]. In summary, Higley stated that in 1992, Tastemaker (later to become a Givaudan subsidiary) began an investigation prompted by reports of respiratory illnesses among its employees. The investigation did not "identify any definitive agent that was causing" the respiratory concerns, and as of 2008, Higley "[did] not know . . . that exposure to diacetyl . . . can cause broncholiotis obliterans." *Id*., ¶¶ 20, 25, 26. The affidavit does not explain why diacetyl exposure in other plants would not be comparable to diacetyl exposure in the Valparaiso plant.

briefing. For example, Givaudan asserts that Johnson could not have been exposed after January 1995 because "Tastemaker's last sale of any product to the Valparaiso Plant" was in January 1995. *See* Resp. at 5, citing [DE 174-2 (Declaration of Doug West)]. But it is unclear why a compound sold to the plant in January 1995 could not have been used in the plant later on. It is no surprise that Plaintiffs' "own cited evidence" does not disprove Givaudan's arguments – that is why they are attempting to seek discovery. Givaudan has not carried its burden to show that Plaintiffs' requests are improper, because the scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense," even if that matter is later found to be inadmissible. Fed. R. Civ. P. 26(b)(1).

For these reasons, Givaudan cannot limit its production merely to documents related to "products containing diacetyl that were sold to the [Valparaiso plant]." At the same time, having reviewed these specific requests, the Court agrees with Givaudan that the term "custodial file" is vague, and it would not be reasonable to produce "every single piece of paper in all files that may have been created or maintained by Mr. West or Dr. Stults." Resp. at 24-25. The Court will order the parties to confer regarding these two requests, so the number of documents sought remains within a reasonable limit. *See B.P. v. Abbott Laboratories, Inc.*, No. 12-CV-52-GPM, 2013 WL 12173240, at *3 (S.D. Ill. July 3, 2013) (ordering a party to "define precisely what the term 'custodial file' means"). If a dispute persists, the parties will be directed to provide short, supplemental filings in advance of the next status hearing.

**Requests #9 and #10**

Next, Plaintiffs request all of Givaudan's documents pertaining to "'employees or former employees of ConAgra or its predecessors'," and pertaining to "representatives and/or current or former employees of Defendants and other suppliers of flavors to ConAgra." [DE 166-8 at 7-8].

Givaudan's initial disclosures identified both groups of people as possessing information that could support its defenses.[5] Givaudan objected to the requests as overly broad and unduly burdensome (among other objections) and agreed only to produce documents "related to the ConAgra Valparaiso Plant and/or products containing diacetyl sold to the ConAgra Valparaiso Plant during Plaintiff's time period of employment." *Id*. Here, the Court agrees with Givaudan that Plaintiffs' requests are overbroad. Clearly, Givaudan does not need to produce *all* documents "pertaining" to ConAgra employees and "current or former employees of Defendants and other suppliers of flavors" to ConAgra.

Plaintiffs note that ConAgra's knowledge of diacetyl is relevant because Givaudan argues ConAgra's status as a "sophisticated intermediary" bars all claims against Givaudan. *See Aregood v. Givaudan Flavors Corp.*, 904 F.3d 475, 483 (7th Cir. 2018). But the requests here are not targeted to that issue; they seek every document in Givaudan's possession that mentions ConAgra employees in any context. Information bearing on ConAgra's own knowledge would be more efficiently sought from ConAgra, rather than Givaudan. It also appears that any Givaudan documents addressing the dangers of diacetyl, even if relevant to ConAgra, are already covered by other requests (*see* [DE 166-8, Requests #1, 5, 7, 26, 27, and 29]). The Court therefore finds that the production already promised by Givaudan satisfies its obligations as to Requests #9 and #10.

**Request #14**

Plaintiffs request "any documents that were produced" in *Arthur et. al. v. International Flavors and Fragrances, Inc., et al.*, a 2006 state court case in Ohio that Plaintiffs describe as "nearly identical to this case in every way." Pl. Mem. at 16. They explain that "*Arthur* was one of

---

[5] Although Givaudan's disclosures identified those groups as potentially having discoverable information, Givaudan did not say that it was in possession of that information. That distinguishes these requests from Requests #5 and #7, in which Givaudan identified potentially discoverable information in its own possession that it is now declining to produce.

8

Givaudan's earliest popcorn lung cases, and it involved plaintiffs from a Conagra facility who made claims that they suffered lung injury from inhalation exposure to Givaudan's diacetyl products, that Givaudan knew or should have known of the risks of its diacetyl products, and that Givaudan failed to warn." *Id*. Givaudan refused to produce any documents from this case, stating that the cases were not comparable because the *Arthur* plaintiffs worked at a different plant, with different products and different levels of exposure, and sustained different injuries. [DE 166-8 at 11]. Clearly, Plaintiffs here are not entitled to all documents in a case from 15 years ago simply because it involved Givaudan and diacetyl. However, based on the descriptions of the case provided by both parties, many of the documents in *Arthur* would be relevant to Plaintiffs' claims. Plaintiffs' brief identifies the common topics more precisely: "Givaudan's corporate knowledge of the hazards of diacetyl, internal policies it had for the handling of diacetyl, the warnings it was giving to its own employees, information [regarding the safety of diacetyl] it did or did not pass along to [ConAgra], internal studies [Givaudan] had commissioned on diacetyl [. . .], and knowledge of sickness and death in its own facilities from a medical condition identical to the one being claimed by Plaintiff." [DE 166 at 16-17 (revised by the Court)]. Regardless of the differences with *Arthur*, documents relating to those topics are relevant and proportional to the needs of this case. To the extent not already produced in this litigation, Givaudan will be ordered to produce any documents produced in the *Arthur* litigation pertaining to any of those topics.

**Requests #15-24**

Next, Plaintiffs seek deposition transcripts from prior diacetyl lawsuits by ten different Givaudan representatives "given in any lawsuit making allegations of lung damage from inhalation of flavoring chemicals." Plaintiffs believe these ten individuals had knowledge relating to

9

Givaudan's understanding of diacetyl during the 1990s and 2000s.[6] Pl. Mem. at 18-20. Givaudan objected to the requests as "overbroad, unduly burdensome and harassing," and declined to produce any of the requested transcripts, again citing the factual differences between the prior cases and this case. [DE 166-8 at 11-18].

As with the *Arthur* request, the Court acknowledges the differences between this case and other diacetyl cases involving Givaudan, and with "any lawsuit making allegations of lung damage from inhalation of flavoring chemicals." It is possible that some of the requested depositions may not be relevant to the claims here. But for the reasons previously explained, the Court disagrees with Givaudan's statement that because those cases may not "have arisen under circumstances substantially similar to [Johnson's] alleged injury . . . documents related to [prior] claims are neither relevant nor proportional to the needs of this case." *See id*. Depositions that demonstrate Givaudan's general knowledge of the dangers of diacetyl are relevant, even if the individual circumstances of those plaintiffs were different.

The briefing does not provide the Court with enough information to discern which of the Givaudan representatives have provided relevant testimony that is proportional to the needs of this case. Although Plaintiffs describe the roles of these ten individuals "upon information and belief," Pl. Mem. at 18-20, it is unclear whether these individuals were deposed on those topics. As with Request #14, the Court will instruct that Givaudan produce any of the requested deposition transcripts and exhibits that relate to (1) Givaudan's corporate knowledge of the hazards of diacetyl, (2) internal policies it had for the handling of diacetyl, (3) the warnings it was giving to its own employees, (4) information regarding the safety of diacetyl it did or did not pass along to ConAgra, (5) internal studies Givaudan commissioned on diacetyl . . . , **or** (6) knowledge of

---

[6] The identified representatives are John M. Hochstrasser, Karen Duros, Stuart Brooks, James Lockey, Nancy Higley, Stephan Block, David Bratton, Michael Davis, Glenn Ingraham, and Peter Angelo.

10

sickness and death in its own facilities from a medical condition identical to the one claimed by Richard Johnson. The production is therefore limited to depositions in diacetyl cases, rather than "any lawsuit [alleging] lung damage from inhalation of flavoring chemicals" as originally sought by Plaintiffs. If a dispute persists as to whether a transcript or exhibit falls within these categories, the parties will be directed to provide short, supplemental filings to be considered at the next status hearing.

### Request #25

Next, Plaintiffs request "any documents that [Givaudan] transmitted to, or received from, any state or federal agency pertaining to occupational injury that was suspected or thought to be related to [its] employees' lungs and/or pulmonary health and/or inhalation exposures." Givaudan declined to produce any documents, again objecting on the basis that any injuries to its employees occurred under different circumstances to Johnson's injury. As explained above, even if the circumstances of the injuries were not identical, the documents could reveal discoverable information about Givaudan's knowledge of diacetyl's potential dangers. The Court is further persuaded by a case in another district cited by Plaintiffs, *Kuiper v. Givaudan, Inc.*, 602 F. Supp. 2d 1036, 1048 (N.D. Iowa 2009). In the context of a motion *in limine*, the Court considered whether evidence of Givaudan employees' health conditions could be admitted at trial as evidence of Givaudan's duty to warn. Givaudan argued that the injuries were too dissimilar from the plaintiff's, in part because they were sustained at different plants. The court permitted the evidence, and observed: "[E]vidence of Givaudan's employees['] health conditions is relevant to the issue of notice and Givaudan's knowledge of the possible dangers posed by diacetyl which may, in turn, have given rise to a duty to warn." 602 F. Supp. 2d at 1047-48. Givaudan will be ordered to comply

with Request #25, but only needs to produce documents relating to injuries where the affected employees were believed to be exposed to diacetyl.

**Requests #26-28**

Finally, Plaintiffs seek documents sent between Givaudan and two trade groups, "FEMA" and "RIFM"[7], regarding investigations and studies related to "flavors, diacetyl . . . and/or other flavor ingredients," and documents "pertaining to any meetings or conversations" Givaudan had with FEMA regarding "bronchiolitis obliterans, diacetyl and/or other flavor ingredients, worker health, sick or injured [ ] workers." [DE 166-8 at 19-20]. Givaudan objected that the requests were vague, overbroad, and unduly burdensome, in part because they were not limited to the Valparaiso plant or the time of Johnson's employment, but agreed to produce "responsive, non-privileged documents related to diacetyl and/or butter flavors containing diacetyl," and "responsive, nonprivileged documents relating to FEMA conferences that Givaudan employees have attended and FEMA communications related to diacetyl and butter flavors." *See id*.

Plaintiffs believe "there are documents responsive to these requests . . . that have not been produced," asserting that Givaudan[8] had two meetings with FEMA that were not accounted for in the document production. Pl. Mem. at 23. Givaudan denies that those meetings related to diacetyl or employees who were ill from diacetyl exposure. Resp. at 25-26. The evidence presented by Plaintiffs, including the deposition transcript of a FEMA attorney and handwritten notes produced by FEMA, indicate that the meetings related to suspected cases of broncholiotis obliterans reported by Tastemaker, although a link to diacetyl was not necessarily articulated at that stage. *See*

---

[7] "FEMA" is the Flavor Extracts Manufacturers Association, *see* Pl. Mem. at 8. "RIFM" is not defined in the briefing, although the Court's research indicates that a trade association, the Research Institute for Fragrance Materials, uses that acronym. *See* http://rifm.org (last visited April 21, 2022).

[8] Givaudan clarifies that Tastemaker, which had yet to be acquired by Givaudan, was the entity involved in the disputed meetings with FEMA.

Deposition of John B. Hallagan, 46:23-47:14, 68:19-69:10 [DE 166-6]; [DE 166-7]. The Court finds that, although the testimony and notes do not show that the participants identified diacetyl, the meeting documents likely bear on Tastemaker's understanding of the reported illnesses, and therefore, the extent of the duty to warn. Indeed, if the documents confirm Givaudan's representations about these meetings, this evidence would cut against the existence of a duty to warn against diacetyl specifically.

However, the Court agrees with Givaudan that the requests are overbroad: Requests 26 and 27 seek all documents relating to studies of "flavors," and Request 28 seeks all documents pertaining to "other flavor ingredients, worker health, sick or injured (including death) workers." *See* [DE 166-8] at 19-20. Except for the two disputed meetings, Plaintiffs have not shown why studies specific to other compounds and ingredients would be probative as to diacetyl, nor why every discussion of "worker health" or "sick or injured [] workers" is relevant or proportional to the needs of this litigation. Accordingly, Givaudan must supplement its responses to Requests 26, 27, and 28 by producing the documents pertaining to the two meetings identified by the Plaintiffs in their motion, but need not produce any other documents for these requests beyond what it has already promised.

## CONCLUSION

For the reasons described herein, the Court hereby **GRANTS in part and DENIES in part** Plaintiffs' Motion to Compel Defendant Givaudan Flavors Corporation ("Givaudan") to Respond to Discovery [DE 165]. The Court **ORDERS** Givaudan to supplement its responses to written discovery, and produce additional documents as directed in this opinion, by **June 2, 2022**. The Court further **ORDERS** the parties to confer regarding Requests #5, 7, and 15-24, as directed

in this opinion, and make supplemental filings by **June 6, 2022**, if any party believes further court intervention is required.

The Court encourages parties to resolve any disputes regarding attorney fees without court involvement, particularly when a motion to compel is granted in part and denied in part. However, noting that Rule 37(a)(5)(C) requires the Court to give the parties "an opportunity to be heard" regarding apportionment of reasonable expenses for the motion, the Court **SETS** a deadline of **May 19, 2022**, for Plaintiffs to file any brief requesting an award of reasonable expenses. Givaudan may file a response by **June 2, 2022**.

So ORDERED this 5th day of May, 2022.

                                              s/ Joshua P. Kolar
                                              MAGISTRATE JUDGE JOSHUA P. KOLAR
                                              UNITED STATES DISTRICT COURT